The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Craig H.D. Armon presiding. Good morning, counsel. Our next case is 4-25-0573, People of the State of Illinois v. Jackson. Counsel for the appellant, please state your name for the record. Good morning, Adrienne River. Thank you, counsel. And counsel for the appellee, could you please state your name for the record? Adam Trejo. Thank you. Ms. River, you may proceed. Thank you. Good morning, your honors and counsel. I plan to address issue one, and if there's time, go on to issue two. Jackson here made more than a substantial showing that his trial counsel was ineffective for not offering to stipulate to the fact that Jackson had a prior qualifying conviction for UUW by a felon. People v. Pete, decided in 2001, was a very significant case. It was the first case in Illinois that adopted old chief, which meant that while previously the state could choose to introduce evidence of the name of the prior felony to prove that element, now the court had to accept if the defendant stipulated. And then August 2002, 2nd District and Walker followed Pete, and so by the time of the trial in October 2002, the case law was settled and a competent trial counsel would have been aware of the sea change in the law. It was really a big change in the law. As a result of his failure to stipulate, the jury heard the information that Jackson had an armed robbery conviction multiple times in the opening statement, in the parole agent's testimony, in Jackson's testimony, in the closing arguments, and also, of course, in the instructions themselves. The jury being told this was an armed robbery conviction was an element they had to, the state had to prove. The probative value of that kind of evidence of the name of the prior felon conviction at a trial for unlawful use of a weapon by a felon is outweighed by the risk of unfair prejudice, and the evidence should be excluded. This was the holding of the Illinois Supreme Court and Walker. They didn't say there should be some kind of balancing test applied. They said this evidence should not come in, and the admission here of the evidence was very prejudicial to Jackson because, of course, an armed robbery conviction involves, it's a violent offense, involves the use of a firearm, and here the jury was trying to decide whether it was Jackson who shot the gun and attempted murder. Brown, which I cited in the opening brief, noted that when this evidence comes in, when the counsel didn't stipulate, that's the erroneous admission of other crimes evidence, which ordinarily requires reversal, and, of course, the evidence of guilt was closely balanced, and the credibility of Jackson was crucial as he denied confessing, and the appellate court had previously held that it was clear that the evidence produces some uncertainty as to which of the two people present was the actual shooter. So the jury would not have been able to put out of its mind that he had this prior conviction, this violent offense involving a firearm, and no limiting instruction would have made a difference, but I do want to point out that the trial court statement to the parole agencies after the parole agent's testimony was very unclear. Imagine you're a juror, and you hear this, the jury is instructed that the testimony just admitted is for the limited purpose, and the limited purpose relates to the elements in counts three and four only of the indictment, and should be considered by you for no other purpose. The court has not told you even what counts three and four are. In fact, the court, even prior in the transcript, at no point did anybody explain to the jurors what counts three and four were. Also, the court doesn't explain what limited purpose is, so what could a jury full of laymen make of this? They would not understand that they couldn't use the armed robbery conviction as propensity evidence. This is a bad guy. This is what he does, and that is going to affect my decision on whether he was the bad guy here. Also, then when Jackson testified, and he was asked about his conviction, there was no limiting instruction given there. Now, the state contends that we don't know that at the close of the trial whether the court's oral statement was repeated, but when the trial court spoke to the jury before the unreported oral instructions, the court said they did not need to write the instructions down because they would be receiving them in writing. The jury is told all the law in this case are going to be in the written instructions we give you, and of course, the written instructions didn't have any limiting instruction. The state also refers to the initial pattern instruction, IBI 1.01, but that says the law that applies to this case is stated in these instructions, and it's your duty to follow all of them. So, it only refers to the duty to follow the written instructions. It doesn't refer to any oral instructions. And then finally, the court finds significant the remark in the opening statement made by the state that the jury should not consider the armed robbery conviction. Well, of course, this is not equivalent of a court instruction, and it was said at the beginning of a two-day trial, and again, it was not included in the official written instructions given to the jury at the very end. And again, I maintain that any oral, any instructions would not be sufficient to erase the prejudice under Walker, fouling old chief. It was decided that there could never be basically a reason to provide this evidence to the jury because the element that you need to prove is that the defendant had a certain status, that of being of a felon. The nature of the felony is irrelevant to the state's proof of the offense. Ms. River, let's assume you're correct in regards to the deficient performance part of the analysis, and let's talk about the prejudice factor. You have Officer Buchanan who testified that is pursuing the suspects. One of the suspects fired a gun. Buchanan says that he kept his eyes on that suspect, and he fired three shots. That individual fell down. Buchanan indicated he thought because of one of his shots that he had fired. The defendant, who is later apprehended, had gone to the emergency room and had an injury that the emergency room physician described as a gunshot wound. There were bullet holes found in the defendant's clothing. He had a gunshot residue collected from the sweatshirt. You have Second Officer Tyndall who was also present. She observed Buchanan shoot an individual and saw the suspect fall after Buchanan fired his weapon. The defendant was apprehended very near where this took place. Why is it that you believe that the jury being told about the armed robbery conviction should cause us to believe that was prejudicial in light of the very significant evidence establishing that the defendant was the shooter? Well, there was only sufficient evidence to convict. The evidence was not overwhelming. I believe that Officer Buchanan said he actually was not sure whether the person who fell because he was shot. He had a lot of uncertainty. He changed his mind as to who he thought the and then he ultimately testified he just didn't know. As far as the gunshot residue, the expert said that it was consistent with firing, but it could be consistent with transferring from contact. We know that Jackson also said that was why he checked specifically the cuff, because that would put it in greater proximity with the handgun. Did he say? I don't recall if he said that's why he did it, but I mean that that makes sense that you would. I'm sorry. That's one of the reasons he examined the cup. Yes, that would make sense. Yes, but also that Jackson was tackled and handcuffed by the officer who had fired a gun. So, the expert could not rule out that there had been a transfer as opposed to Jackson being the one who actually fired the gun. We can go back to what Justice Harris was asking initially, as far as the extent of the evidence. Buchanan fires the gun at the person that he saw shoot at him, correct? He's not positive. If he, I mean, he believes that a shot was fired at him and he returned fire. Okay, and the person that he saw fire the gun, he kept that person in his view, correct? I mean, I think he said he tried. It was very dark. He just wasn't sure. So, then a short time later, when he climbs the fence and goes up the hill, he sees Tyndall ordering somebody to the ground. He jumps on top of him and handcuffs him and he says that person is the defendant, correct? I'm sorry, can you repeat that? Would Tyndall? The guy that he jumps on that Tyndall had ordered to the ground is the person that he described as the defendant. Yes, I mean, the defendant was arrested, that's right, at the scene. And that he was the guy that he had kept his eye on. I think he just wasn't sure if that was the guy. He wasn't sure if that was the person who was the shooter. So, after he's arrested, then they find that the defendant has a gunshot wound on his back. And they find that his t-shirt and two sweatshirts have what appear to be projectile holes in the clothing, right? Yes, and Jackson admitted that he was shot. I'm not questioning that he has an explanation for all these things. I'm just asking whether I'm correct as to what the evidence is. And then we have the evidence of the gunshot residue on the cuff of the outer sweatshirt that he was wearing, correct? Yes. And then we have a confession which he contests. Yes, the confession was not recorded. Sure. It's a little suspect that when he that the claim that initially he would have said, I had nothing to do with this. And then after the second conversation, oh, without even being confronted with any new evidence, he goes, oh, yeah, I guess you guys must have figured it out. So, yes, he contests that was correct. Thank you. Okay. And so, yeah, so Jackson admitted being shot. He thought Green had had fired. And so it's possible then that the jury would have to sort out is, could that have happened? Could it have Green shot defendant, he didn't fall down, and the other guy fell down, but was not shot. And other person was Green. And according to all the new evidence for second, the second issue of that, that's a separate issue. But that and the court has recognized before it just was not clear who did it. The officer was not clear who he shot at, who was shooting at him. It was very dark. So that and again, we cannot say for certain that the gunshot residue is due to him being the shooter or whether he was that was a result of being tackled by the officer who had fired a gun. So that's, that's closely balanced evidence. And again, like other cases where improper other evidence comes in, because we're so concerned about the effect of that on the jury and swaying them to think the person is a career criminal, that the risk is too high. That's why we don't want it. We want counsel to stipulate in the beginning. So he should get a new trial. Uh, there's nothing else on that. So just to summarize, he's deficient and the probative value was significantly outweighed by the risk of unfair prejudice. And any oral information given to the jury just wasn't sufficient to cure that erroneous admission of the, of the evidence. And then briefly on, unless there's anything on that else on that, if you want me to go on to issue two, there's time for that. We have two affidavits that were corroborative of Jackson's testimonies. They were not cumulative because he supported his claim. Nelms said that Green admitted that the gun was fired. Fisher actually saw Green. The appellate court has already ruled that the first affidavit from Nelms was not cumulative evidence and has to be the law of the case. The age of the decision has nothing to do with it. The procedural posture has nothing to do with it. The state had argued that the testimony was cumulative and wouldn't have changed anything at trial and the appellate court ruled otherwise. So it would be illogical to find that the Fisher affidavit was merely cumulative when the appellate court has already correctly found that the Nelms affidavit was corroborative evidence. To what extent are either or both of the affidavits exculpatory? To what extent are they? Yeah. Well, I mean, the officer said there was one. What are the affidavits? What is it in the affidavits that exclude the defendant from being involved in the shooting? Well, the affidavit of Fisher says he saw Green fire a shot and then the officers returned fire. Do either affidavits say that the defendant was involved in the shooting? I don't believe that's what Fisher said. He just observed what he saw. He saw Green fire. But it's uncontested that the evidence at trial was that there was one shot fired by somebody at the police officer. So what the record said, I'm trying to see whether the affidavits themselves, either of the people involved in the affidavits, assert that the defendant was not involved in the shooting or was not the shooter. Well, I mean, if an affidavit says Green was the shooter, then it's the same as saying defendant wasn't the shooter and there was only one shot fired. So it's not, it can't be, there's no question that there was only one shooter and one shot fired. So they are exculpatory because Nelms' affidavit says Green said he's the one that fired the gun and Fisher said that he saw that it was Green that shot the gun. So those are exculpatory. I mean, they may not be, obviously not very well written and not written by how a lawyer would write them, but they swore to what they had either seen or someone had told them and that should be sufficient. I mean, again, the appellate court has already found that the Nelms' affidavit was sufficient and even went on to say that therefore he should have an evidentiary hearing on that affidavit, on that claim, on that one claim of actual innocence. So no further questions, it will save some time for rebuttal. I see no questions. Thank you, counsel. You will have an opportunity in rebuttal. Thank you. Counsel for the appellee. May it please the court, counsel, Adam Trejo on behalf of the people of the state of Illinois. Defendant first argues on appeal that he made a substantial showing of both ineffective assistance of trial and appellate counsel, where he claims trial counsel failed to stipulate to prior felony conviction, that conviction being armed robbery in regards to count three and four. However, within the defendant's open and brief, they omit one specific fact in their argument. In this case, the state proved the prior felon status by a witness named Talbert. He was the parole officer. And immediately after this testimony, the court instructed the jury of following limiting instruction. The testimony just admitted is for the limited purpose and the limited purpose relates to elements in counts three and four, only of the indictment and should be considered by you for no other purpose. So it is the state's position that trial counsel was not ineffective because for a failure to stipulate because there was a limited instruction given to the jury. And moreover, I wanted to emphasize that the ineffective assistance of trial claim could have been raised on appeal and therefore it is forfeited. However, in the post-conviction petition defendant alleged ineffective assistance of appellate counsel. And this is the record that appellate counsel received when deciding not to raise this issue on direct appeal. First, the jury instructions provided by the trial courts at the end of the evidence are not within the record. So appellate counsel had the limiting instruction and did not have the instructions transcribed within the record. Appellate counsel also had this within the record. And the state's opening remarks, the prosecutor reminded the jury of a statement made by trial counsel made during juror selection. That statement was the mere fact that the defendant was convicted of armed robbery isn't to be considered by you in any way relative to whether or not he committed any of these offenses, except it's relevant on the issue of the unlawful position of a weapon by a felon. So appellate counsel here is not ineffective for failing to raise an issue where the jury was primed from jury selection, not to consider the specific predicate felony as evidence of propensity or as proof that he committed these crimes. Moreover, there was a limiting instruction. And the state would also like to note the cases the defendant relies on, they are factually distinguishable. And the analysis is quite different. In their opening remarks, defendant cites to Pete, a fourth district 2001 case and Walker, a second district 2002 case. In those cases, they tell the trial court what to do when a defendant offers a stipulation. The analysis is whether the trial court abused its discretion and failing to provide a requested stipulation by defense counsel. So the analysis is on the trial court's ruling. It's not on Strickland. It's this case is whether trial counsel failed to stipulate at all. And one fact distinguishes this case from all the cases cited within the defendant's brief. And that's the limiting instruction that was provided in this case that is missing and all of the other cases defendant relies on. Moreover, even if this court finds deficient performance by two attorneys, trial counsel and appellate counsel, there is no prejudice in this case. Because the evidence here is overwhelming. The state would like to know that the affidavits are not really relevant to the prejudice analysis at this stage, because obviously the affidavits and the collateral proceeding didn't exist at the time of appellate counsel brief this case. So those aren't really relevant to the prejudicial analysis. But this is what we have. This is the evidence we have in this case as was procured in opening remarks by defendant. We have a defendant was apprehended at the end of a pursuit after Buchanan returned fire at the suspect who fired at him. So he is at the scene. This isn't a case where evidence is linking him through DNA testimony. He's caught there at the scene after pursuits. The defendant had a shoulder wound consistent with being shot. He lied and said that the wound was created by glass. And clothing had projectile holes in the shoulder area. The defendant's sweatshirt contained gunshot residue consistent with right hand firing. While Green's GSR testing was inconclusive, police recovered a revolver with a spent casing from a roof along the flight path. And then we have a defendant who admitted that he had the gun, that it went off and that he threw it on the roof and that he recovered and the gun recovered was his. That is the confession admitted. The evidence is extremely overwhelming. And even if this court finds counsel should have stipulated, there was a limiting instruction. In regards to issue two, the affidavits, the affidavits, as this court noted, the affidavits don't, well, the defendant had to show a substantial showing of actual innocence. And in their brief, defendant argues that the evidentiary hearing was the opportunity for the defendant to flesh out the issues within the affidavits. But at a second stage post-conviction proceeding, it's not a rubber stamp. The defendant is treating the second stage posture as a rubber stamp to get it to the third stage hearing to flesh out issues. But that's not the purpose of a second stage hearing. But the affidavits don't exclude defendant from being at the scene. They don't indicate that defendant wasn't involved. How do you respond to counsel's argument that the evidence was there was one shot fired towards Buchanan and the affidavits indicate that an individual other than defendant fired a shot? Well, the veracity behind those statements are severely undermined because one, the Nelms affidavit, he wasn't there. He didn't witness the shooting. The Nelms affidavit states that told him that he had the gun. So we have an affidavit. You have to take the affidavits, the truthfulness, you have to accept that unless it's rebutted by the record. So does the record refute that? It does because we have the affidavits don't explain the evidence. The affidavits don't, they don't, they don't explain away why the defendant confessed. Is that necessary? It's necessary to establish, it's necessary to establish that this was conclusive evidence that if admitted, it would have changed the result on retrial. You can't view this, these affidavits in a vacuum, right? That you have to place them along with the evidence. Otherwise there's no context and moreover, I don't want to run out of time. I wanted to note that in Fisher's affidavit, he doesn't even identify who B.D. Paul is. He doesn't, the affidavit doesn't state that B.D. Paul is Paul Green. So we don't even have proper identification in that case. And I wanted to take this opportunity to know that yes, the record does positively rebut some of the allegations in the affidavit. According to Fisher, he witnessed part of the exchange around midnight. So it's dark, he's in his car, he's in a, the scene was described, the fleeing was described as occurring in a poorly lit residential empty lot. If Buchanan couldn't have identified for certainty from a 50 to 75 feet range running after two suspects, the record is clearly rebutted that that an individual named Fisher could clearly see the faces of the individuals running in a poorly lit empty residential lit area. So it is the state's contention that the record rebuts some of the statements within these poorly written affidavits. If this court doesn't have any questions, the people of the state of Illinois respectfully request that this court affirm the second stage dismissal of defendants post-conviction petition, which has been pending at this stage for close to 20 years. Thank you. I see no questions. Thank you, counsel. Counsel for the appellate. Yeah. Appellant, I'm sorry. Yeah. Well, it's not through the fault of the appellant. This has been pending for 20 years. This case has gone back and back and the judges and attorneys often have not followed the instructions of the prior appellate court. Counsel talks about the oral instructions and statement in opening statement. I've already explained those, that they were not sufficient for various reasons and the fact that Pete and Walker didn't have those instructions is irrelevant. The fact that there were an offer to stipulate was made in those cases is irrelevant in that the point of those cases is that it provided the authority for trial counsel to request or rather to offer to stipulate. That's the main point there. The state incorrectly argued that there wasn't such authority and I provided this authority that had been decided by the time of trial. The evidence, as far as prejudice, evidence cannot be overwhelming when there are conflicting versions. I mean, that is just black letter law, Naylor, other cases. We can't just assume that the confession was correct. He denied it and we've talked about that. But the confession stands as evidence, correct? It wasn't suppressed, no. Okay, well, so the answer is yes, it stands as evidence, right? It stands as evidence and then it also stands as evidence is that he denied doing it and that the jury could consider that it was not recorded and we just can't assume that a confession actually occurred because the police officer testified to it. As far as issue two, the state argues their veracity is questionable. Well, of course, and Justice Harris, I think, pointed this out. This is not a second stage determination and the issue and actual innocence is whether this new evidence would raise issues for the jury. We don't talk about, we don't analyze whether the record rebuts that. We have to determine at an evidentiary hearing if these affiants are credible and if they are, if that would raise new questions for the jury. Well, I think it's a little more than that, isn't it, counsel? It has to be of a conclusive character that when considered along with the trial evidence would probably lead to a different result. Yes, I didn't mean to, I wasn't saying like the entire test here, but as far as him saying that that their veracity is questionable and they didn't talk about, well, why would he confess? I mean, that's ridiculous. These people were talking about what they had seen or what they'd heard. Clearly, that is something that has to be explored at an evidentiary hearing that cannot be determined right now that, oh, we can't believe them and they didn't address everything that happened after the offense, the arrest, that kind of thing. I've already addressed in the reply brief that the notion that we don't even know if he was, if Fisher had observed this shooting is ridiculous. I mean, it was alleged by the defendant's petition that this was a new witness. So it's clear, even though there was a poor choice of words to use B.D. Paul instead of Green. Maybe he didn't even know his last name. I don't know, but it's ridiculous to argue that just based on that question, whether it could be B.D. Paul or some other shooting at that exact location at that same day. I mean, if you go ahead and make that argument at an evidentiary hearing, but that argument will not support the claim that these affidavits can be dismissed out of hand and that no hearing is needed to explore it. So your honors, this court should reverse for new trial based on the failure of trial counsel to stipulate. The probative value was outweighed by the risk of unfair prejudice under Walker and the case, the evidence was not overwhelming and the nature of this evidence was highly prejudicial armed robbery conviction. You cannot say as a matter of law that the result would not be would not change under the strict strickland reasonable probability standard. And alternatively, this court should remand for an evidentiary hearing on the actual innocence claim. All right. Thank you, counsel. We appreciate your arguments. I take this matter under advisement for stand and reset. Thank you.